Dawkins v. State 
















IN THE
TENTH COURT OF APPEALS
 

No. 10-93-191-CR

     JOHN DENNIS DAWKINS,
                                                                                              Appellant
     v.

     THE STATE OF TEXAS,
                                                                                              Appellee
 

From the 278th District Court
Walker County, Texas
Trial Court # 16,461-C
                                                                                                    

O P I N I O N
                                                                                                    

      A jury found John Dawkins guilty of burglary of a building and the court assessed
punishment, enhanced by two prior convictions, of thirty-five years imprisonment. See Tex.
Penal Code Ann. § 30.02(a)(1) (Vernon 1989). By two points of error, he complains that the
court overruled his objection to hearsay testimony from two State's witnesses. We will affirm.
      On the night of January 8, 1991, Dawkins attended a birthday party for Patsy Brooks at her
trailer home. Around 10:00 p.m., Dawkins, Sammy Gill and a woman named Diane left the party
to go for more beer. By the time the party ended, the three had not returned. Patsy and two of
her guests, Mary Brooks and Bret Lewis, went to sleep in the trailer. Dawkins, Gill, and Diane
returned to Patsy's trailer at approximately 2:00 a.m. Diane went inside, while Dawkins and Gill
remained outside.
      When Diane went inside, she woke Mary and Lewis and told them that Dawkins and Gill had
been talking about obtaining gasoline from one of the cars parked at the trailer. The three of them
began to observe Dawkins and Gill standing in the front yard of the trailer. They saw Dawkins
and Gill holding a gas can and a hose. After a few minutes, Dawkins and Gill left their field of
vision, only to return some twenty minutes later. The people inside the trailer then watched as
Dawkins and Gill poured the contents of the gas can into the fuel tank of Dawkins' truck. 
      After Dawkins and Gill finished pouring the contents of the gas can into the truck's tank, they
walked around the yard, eventually going into a storage shed on the property. The occupants of
the trailer became concerned that the pair was stealing some of the items in the shed and called the
Sheriff's Department. Because none of the three could give accurate directions to the trailer, they
woke up Patsy. While Patsy was on the phone with the Sheriff's Department, the occupants of
the trailer observed Dawkins and Gill push a riding lawn mower across the yard and begin to load
the lawn mower into the truck.
      While Dawkins and Gill were wrestling with the mower, Deputy Mike Smith arrived in his
patrol car. He stopped in the front yard, turned on his bright headlights, overhead "take-down"
lights and a window-mounted spotlight, and ordered the pair to stop. Rather than obeying the
officer's instructions, Dawkins and Gill fled into the woods.
      Although the Sheriff's Department brought tracking dogs to the location, Dawkins and Gill
escaped through the woods. The next morning, Smith found Dawkins and Gill at a convenience
store approximately ten miles away and arrested them. According to Smith, Dawkins looked as
if he had taken "a pretty unbeaten path" to get to the store and appeared "relieved" and "pretty
tired" when he was arrested.
      Of all of these participants, only Diane and Gill did not testify at the trial. Dawkins' 
complaints concern testimony from Mary and Lewis regarding the statements that Diane made
when she returned to the trailer. During her testimony, Mary stated—over Dawkins hearsay
objection—that "[Diane] said that she was back and that we needed to go and watch our vehicles
because [Dawkins and Gill] had spoken about getting some gas out of some vehicles." Lewis, also
over a hearsay objection, testified that "[Diane] said that we ought to keep an eye on our cars
because [Dawkins and Gill] were wanting to siphon some gas out of the car." 
      Dawkins, who testified in his defense, stated on direct examination: "I told [Diane], I said,
well, can I get some gas out of your car? And she said yes. And I said -- I asked her, do you
have a can and a hose? And she said no, there is one right there beside the trailer and there is my
car right here, you're welcome to siphon some gas. I siphoned that gas. It was her vehicle." On
cross-examination, Dawkins testified, "And I asked, you know, I asked, I said may I have some
gas to get back to town so I can get to Houston? She said yes, can is right there, find a hose. .
. . Gallon is all it took anyway. I asked for permission. "
      For purpose of analysis, we will assume that the court should have sustained the objection and
proceed to a harm analysis of the evidence.


 See Tex. R. App. P. 81(b)(2); Harris v. State, 790
S.W.2d 568 (Tex. Crim. App. 1989). In Harris, the Court of Criminal Appeals articulated the
standard we are to use to determine if an error is harmful. See Harris, 790 S.W.2d at 587-88. 
We are not to focus on the weight of the evidence which supports the jury's conclusion. See id.
at 587. Instead, we "first, isolate the error and all its effects, using the considerations set out
[below] and any other considerations suggested by the facts of an individual case; and second, ask
whether a rational trier of fact might have reached a different result if the error and its effects had
not resulted." See id. at 588. To isolate the error we "examine the source of the error, the nature
of the error, whether or to what extent it was emphasized by the State, and its probable collateral
implications . . . how much weight a juror would probably place upon the error, [and] whether
declaring the error harmless would encourage the State to repeat it with impunity." See id. at 587. 
      The error occurred during the direct examination of two of the State's eyewitnesses. The
contents of the erroneously admitted testimony referred to Dawkins' desire for fuel for his car,
but none of the State's witnesses indicated that he was going to steal the gasoline. In fact, the only
mention of a criminal implication to the testimony came from Dawkins during cross-examination
of Mary, when his attorney asked, "Ya'll are worried about the gasoline; isn't that right? To use
an old expression, I don't know if you have ever heard it, Kentucky credit card? Anyway, siphon
gas?" The defense repeated this implication in closing arguments by saying, "Quite frankly, [if]
roles were reversed and you were sitting there, [thinking] somebody is out there with a Kentucky
credit card and maybe boost a little gasoline, you would be kind of apprehensive about your
vehicle, too." The State did not imply either in direct examination of its witness, cross-examination of Dawkins, or in its closing argument that Dawkins intended to steal the gasoline. 
We do not believe that a juror would place much weight on the fact that Dawkins needed gasoline
to get to a local filling station. Additionally, Dawkins confirmed the truth of the statements
attributed to Diane during his testimony. Finally, in this context, declaring this error harmless
would not encourage the State to repeat the error, mainly because the determination of the hearsay
nature of testimony is fact intensive and the principles surrounding hearsay and its exceptions are
well known among trial attorneys. 
      We conclude beyond a reasonable doubt that the erroneous admission of the hearsay testimony
did not contribute to Dawkins' conviction. See id. at 588. Because the court assessed his
punishment, we also conclude beyond a reasonable doubt that the error did not contribute to his
sentence. See id. Points one and two are overruled.
      The judgment is affirmed.
 
                                                                                 BOB L. THOMAS
                                                                                 Chief Justice

Before Chief Justice Thomas,
          Justice Cummings, and
          Justice Vance
Affirmed
Opinion delivered and filed April 27, 1994
Do not publish